UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| WILLIAM H. KRUEGER, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>ALPHOSO R. JACKSON, in his Official )<br>Capacity as Secretary of the United States )<br>Department of Housing and Urban )<br>Development, )<br>)<br>Defendant. ) | Case No. 4:04-cv-01643 SNL |

## MEMORANDUM

Plaintiff, a white male over fifty years of age, brought an employment discrimination suit *pro se* against the United States Department of Housing and Urban Development (HUD), under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* (2004), the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.* (2004), and the Fifth Amendment, claiming retaliation and discrimination on the basis of age, sex, and race. It is Plaintiff's assertion that HUD's use of an Affirmative Employment Plan (AEP) discriminates against older white males by creating an over-representation of women and minorities in the workplace. In addition, Plaintiff claims that HUD violated the Privacy Act by disclosing his EEO affidavit to an interested party. This is before the Court on Defendant's combined Motion to Dismiss and Motion for Summary Judgment (#4), filed February 11, 2005.

## SUMMARY JUDGMENT STANDARD

1

Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy. *New England Mut. Life Ins. Co. v. Null*, 554 F.2d 896, 901 (8th Cir. 1977). Summary judgment motions, however, "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." *City of Mt. Pleasant v. Associated Elec. Coop. Inc.*, 838 F.2d 268, 273 (8th Cir. 1988).

Pursuant to Fed. R. Civ. P. 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Poller v. Columbia Broadcasting Sys., Inc.*, 368 U.S. 464, 467, 82 S. Ct. 486, 7 L. Ed. 2d 458 (1962). The burden is on the moving party. *City of Mt. Pleasant*, 838 F.2d at 273. After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

In passing on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion, and give that party the benefit of any inferences that logically can be drawn from those facts. *Buller v. Buechler*, 706 F.2d 844, 846 (8th Cir. 1983). The

court is required to resolve all conflicts of evidence in favor of the nonmoving party. *Robert Johnson Grain Co. v. Chem. Interchange Co.*, 541 F.2d 207, 210 (8th Cir. 1976). With these principles in mind, the Court turns to an examination of the facts.

## FACTUAL BACKGROUND

The Plaintiff, William H. Krueger, is a white male born in 1948. He has been a federal employee for twenty-eight years, and is currently a GS-13 Auditor with HUD's Office of Inspector General (OIG). Plaintiff has a Bachelors Degree in Business Administration, a Bachelors Degree in Accounting, is a Certified Fraud Examiner, and has earned numerous job-related awards during his employment. Plaintiff complains that HUD's hiring policies have a discriminatory impact on older white males and are the cause of Plaintiff's inability to obtain a promotion.

In January of 2000, HUD announced that there were vacancies in the Real Estate Assessment Center (REAC). The agency did not determine which locations would be hiring, therefore applicants applied for positions nationwide. Employees were required to submit one application per location, and any individual selected for the position was required to transfer at his/her own personal expense. Plaintiff applied for the St. Louis office, and was put on the Best Qualified List. HUD later decided not to hire in St. Louis, instead hiring auditors for the Kansas City, Chicago, Jacksonville, and Washington D.C. locations. Because the St. Louis HUD location did not hire a new auditor, Plaintiff's application was never sent to the selecting official. The individual hired by the office closest in proximity to St. Louis was a Caucasian man born in 1946. The remaining offices hired a

3

Caucasian woman born in 1968, a Caucasian man born in 1946, an Asian woman born in 1947, and a Caucasian woman born in 1959.

On October 8, 2000, Plaintiff filed a complaint with the Equal Employment Opportunity Commission (EEOC), claiming that HUD discriminated against him on the basis of his race, sex, and age by failing to promote him to the REAC position. Specifically, Plaintiff alleged that HUD advertised jobs in all 76 duty locations to facilitate hiring in cities where women and minorities were the preferred candidates. According to Plaintiff's allegations, the impetus behind HUD's policy was the AEP, which encourages managers to make hiring decisions that cause the percentage of minorities and women HUD's employ to meet or exceed the percentage of such workers in the civilian labor force. During deposition testimony, some of HUD's managers expressed surprise at the use of a nationwide job offering, but asserted that all hiring decisions were based solely on merit. After a hearing, the Administrative Judge found in HUD's favor. Plaintiff appealed to the Office of Federal Operations, which affirmed the Administrative Judge's findings.

On September 30, 2002 Plaintiff filed an affidavit on behalf of Michelle Scott in her Equal Employment Opportunity (EEO) action. Scott, an African-American HUD employee, claimed that she had been subject to disparate treatment and harassment by Ron Hosking, Plaintiff's supervisor. Plaintiff had been Scott's supervisor on a Nationwide Nursing Home Audit. In his affidavit, Plaintiff stated that Hosking overly scrutinized Scott's work product. Plaintiff believed that Hosking had difficulties interacting with African-Americans, and that this caused him to treat Scott poorly.

Then, in February of 2003, Hosking evaluated Plaintiff's performance on the Nationwide Nursing Home Audit. Overall, Plaintiff's review was positive, but it contained one criticism -- that he needed to improve his supervisory skills. Hosking stated that Plaintiff failed to properly help Scott improve her weaknesses during the audit. He felt that Scott's "overall attitude diminished markedly," because of Plaintiff's failure to supervise. D's Ex. 17. Plaintiff disputed the validity of this review, expressing a belief that Hosking was trying to deflect the blame for Scott's EEO complaint onto Plaintiff.

On April 25, 2003, Plaintiff applied for a promotion to the position of Assistant Regional Inspector General for Audit with the OIG in St. Louis. Roger Niesen, Hosking's supervisor, was the Selecting Official. Three people were considered for the position: a white male over forty, the Plaintiff, and Carrie Gray, a white female born in 1974. Prior to sending out her application, Gray contacted Hosking, who reviewed her application. Hosking gave Gray advice on how to improve her application, but did not provide this assistance to the other candidates. Gray was selected.

On July 8, 2003, Plaintiff filed a formal complaint with the EEOC, alleging retaliation discrimination on the basis of his race, sex, and age. No agency action was taken, and Plaintiff brought suit before this Court. Defendant filed a combined Motion to Dismiss and Motion for Summary Judgment, seeking the dismissal of all claims.

**DISCUSSION**

I.  **Fifth Amendment Claims**

Defendant first argues that Plaintiff's Fifth Amendment claims must be dismissed because Title VII and the Age Discrimination in Employment Act (ADEA) provide the exclusive judicial remedy for Plaintiff's discrimination claims. In examining a motion to dismiss, the Court must view the complaint in the light most favorable to the plaintiff and should not dismiss it merely because the Court doubts that the plaintiff will be able to prove all of the necessary allegations. *Bennett v. Berg*, 685 F.2d 1053, 1058 (8th Cir. 1982). Thus, a motion to dismiss is likely to be granted "only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." *Fusco v. Xerox Corp.*, 676 F.2d 332, 334 (8th Cir. 1982).

Title VII prohibits employment discrimination based on race, color, religion, sex, or national origin. 42 U.S.C. §§ 2000e-2 & 2000e-3. It is the "exclusive judicial remedy for claims of discrimination in federal employment." *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 835, 96 S. Ct. 1961, 48 L. Ed. 2d 402 (1976). Therefore, plaintiff's claims of race and sex discrimination under the Fifth Amendment must be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Giles v. EEOC*, 520 F. Supp. 1198, 1200 (E.D. Mo. 1981).

The ADEA is a similar statute to Title VII, forbidding employment discrimination against older employees. *Gen. Dynamics Land Sys. v. Cline*, 540 U.S. 581, 585, 124 S. Ct. 1236, 157 L. Ed. 2d 1094 (2004). And like Title VII, the ADEA is the exclusive judicial remedy for claims of age discrimination in employment. *See Tapia-Tapia v. Potter*, 322 F.3d 742, 745 (1st Cir. 2003); *Purtill v. Harris*, 658 F.2d 134 (3d Cir. 1981); *Zombro v. Baltimore City Police Dep't*, 868 F.2d 1364, 1369 (4th Cir. 1989); *Lafleur v. Tex. Dep't of Health*, 126 F.3d 758, 760 (5th Cir. 1997); *Migneault v. Peck*, 158 F.3d 1131, 1140 (10th Cir. 1998), *rev'd on other grounds by*, 528 U.S. 1110 (2000); and

*Chennareddy v. Bowsher*, 935 F.2d 315, 318 (D.C. Cir. 1991). When Congress enacted the ADEA, it "intended to preempt alternative means of redressing age discrimination in federal employment." *Giles*, 520 F. Supp. at 1200. If alternative forms of redress were available, employees could evade the ADEA'a administrative review requirements. Plaintiff's claim of age discrimination fails to state a cause of action under the Fifth Amendment, and must be dismissed.

## II. Title VII and ADEA Claims

Defendant next argues that Plaintiff's claims of race, sex, and age discrimination must be dismissed for failure to state a *prima facie* cause of action. A plaintiff in a Title VII or ADEA discrimination case can proceed in one of two ways. *Stacks v. S.W. Bell Yellow Pages*, 996 F.2d 200 (8th Cir. 1993); *Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir. 1994). When a plaintiff produces direct evidence, such as statements by decision-makers, clearly showing that race, sex, or age was a motivating factor in the employment decision, or at least significant circumstantial evidence showing a specific link between the discriminatory animus and the challenged employment decision, the burden-shifting standards established by *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S. Ct. 1775, 104 L.Ed.2d 268 (1989), apply. *Stacks*, 996 F.2d. at 201 n. 1; *Beshears v. Asbill*, 930 F.2d 1348, 1353 (8th Cir. 1991). In the absence of such evidence, the guidelines set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), are applicable. *Baucom v. Holiday Cos.*, 428 F.3d 764, 766 (8th Cir. 2005); *Stacks*, 996 F.2d. at 202; *Johnson v. Minn. Historical Soc'y*, 931 F.2d 1239, 1242-43 (8th Cir. 1991); *Halsell v. Kimberly-Clark Corp.*, 683 F.2d 285, 289 (8th Cir. 1982) (citing *Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S. Ct. 1089, 67 L. Ed.2d 207 (1981)). Since there is no direct evidence or specific circumstantial

evidence of discrimination, the Court will analyze Plaintiff's discrimination claims under the *McDonnell Douglas* standard.

*McDonnell Douglas* sets forth a three-part analysis for Title VII and ADEA claims. Under *McDonnell Douglas*, a plaintiff must first establish a *prima facie* case of discrimination by a preponderance of the evidence. If the plaintiff successfully establishes this, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. If the defendant employer meets this burden of production, the plaintiff employee must show by a preponderance of evidence that the articulated reasons for the challenged employment action are pretextual and that the illegitimate criterion was the motivating reason. At all times the plaintiff employee possesses the ultimate burden of proving to the Court that he was the victim of discrimination. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Ghane v. West*, 148 F.3d 979, 981 (8th Cir.1998); *McCullough v. Real Foods*, 140 F.3d 1123, 1126-27 (8th Cir. 1998); *Rose-Maston v. NME Hosps. Inc.*, 133 F.3d 1104, 1107-08 (8th Cir. 1998); *Rothmeier v. Inv. Advisers, Inc.*, 85 F.3d 1328, 1332 (8th Cir. 1996); *Ruby v. Springfield R-12 Pub. Sch. Dist.*, 76 F.3d 909, 911-12 (8th Cir. 1996); *Favors v. Fisher*, 13 F.3d 1235, 1237-38 (8th Cir. 1994). *See also*, *Carter v. St. Louis Univ.*, 167 F.3d 398, 401 (8th Cir. 1999).

To establish a *prima facie* case of discrimination, Plaintiff must produce sufficient evidence to support an inference that he was not promoted for discriminatory reasons. The threshold of proof required in establishing a *prima facie* case is "minimal." *Pope v. ESA Servs. Inc.*, 406 F.3d 1001, 1007 (8th Cir. 2005); *Turner v. Honeywell Fed. Mfg. & Techs., L.L.C.*, 336 F.3d 716, 720 (8th Cir. 2003); *Johnson v. Ark. State Police*, 10 F.3d 547, 551 (8th Cir. 1993). "The elements necessary to

establish a prima facie case vary according to the circumstances of the alleged discrimination." *Favors*, 13 F.3d at 1237.

To establish a *prima facie* case of failure to promote on the basis of age, race, or sex, Plaintiff must show that (1) he is a member of a protected group; (2) he applied for and was qualified for a promotion; (3) he did not receive the promotion; and (4) the position was filled by someone outside of the protected class. *Tatum v. City of Berkeley*, 408 F.3d 543, 553 (8th Cir. 2005); *Hammer v. Ashcroft*, 383 F.3d 722, 724 (8th Cir. 2004); *Tolen v. Ashcroft*, 377 F.3d 879, 882 (8th Cir. 2004); *Wheeler v. Aventis Pharm.*, 360 F.3d 853, 857 (8th Cir. 2004). In a reverse race discrimination case, the Eighth Circuit also requires "that the prima facie case include a showing that background circumstances support the suspicion that the defendant is that unusual employer who discriminates against the majority." *Hammer* 383 F.3d at 724 (internal quotations omitted). And in an age discrimination case, the Plaintiff must show that the position was filled by someone significantly younger than him. *Id.* at 726.

1.      REAC Position

The Court will begin by examining Plaintiff's claims of race, sex, and age discrimination stemming from HUD's failure to promote Plaintiff to the REAC position. Plaintiff alleges that HUD used a nationwide employment search to facilitate hiring in cities where women and minorities were the preferred candidates.

Plaintiff has not made a *prima facie* case of reverse race discrimination; four out of five of the individuals hired for the REAC position were white. Nor has Plaintiff made a *prima facie* case of age discrimination; a majority of the people hired were older than Plaintiff. Plaintiff has also not set forth a *prima facie* case for sex discrimination. Two out of five of the individuals hired for the position were men. It is improbable that HUD would employ a nationwide job search with the sole intention of hiring women, yet only find three qualified women to fill the positions. In addition, when one of the women resigned one month after her promotion, HUD hired a male replacement. This is not indicative of an employment policy that has a disparate impact on men. Plaintiff's argument is untenable.

2. OIG Position

The Court will now examine Plaintiff's claims of race, sex, and age discrimination stemming from HUD's failure to promote Plaintiff to the OIG position. Plaintiff has set forth a *prima facie* case of sex and age discrimination. Plaintiff is a man over forty who applied for and was qualified for a promotion, did not receive the promotion, and a woman significantly younger than Plaintiff was chosen instead. He cannot make a *prima facie* case of race discrimination because the woman hired was white.

The Defendant has articulated legitimate nondiscriminatory reasons for not promoting Plaintiff. Niesen, who was the selecting official, stated that he did not consult the AEP in making this hiring decision. Instead, Niesen hired Gray because she was ranked one point higher than Plaintiff, was better liked by fellow employees, had a more positive attitude, was a Certified Public Accountant,

10

had won national job-related awards, was in HUD's Scholar Program, and had a 4.0 grade point average in college.

To survive this motion, the Plaintiff must show by a preponderance of evidence that Defendant's articulated reasons are pre-textual and that HUD's desire to promote younger women was the true motivating factor. Plaintiff sets forth two arguments to support his contention that the Defendant's stated reasons were pre-textual: the other individual competing for the promotion was a white male over forty who was ranked equally with Gray, yet he was not chosen; and Hosking aided Gray in the preparation of her application, giving her an unfair advantage. These arguments do not suffice. Plaintiff has not shown by a preponderance of the evidence that Defendant's stated reasons for hiring Gray were pre-textual.

3. Retaliation

Plaintiff next argues that the Defendant gave him a negative performance review and failed to promote him to the OIG position in retaliation for his previous EEO activity. To set forth a *prima facie* case of retaliation, Plaintiff must show that (1) he engaged in a protected activity, (2) his employer subsequently took an adverse action against him, and (3) there was a causal connection between the protected activity and the adverse action. *Scusa v. Nestle U.S.A. Co.*, 181 F.3d 958, 968 (8th Cir. 1999). The Defendant may rebut this by advancing a legitimate reason for the adverse employment action. If the Defendant makes this showing, the Plaintiff must show that the Defendant's proffered reasons were merely a pretext for the retaliation. *Montandon v. Farmland*

*Indus., Inc.*, 116 F.3d 355, 359 (8th Cir. 1997). It is undisputed that Plaintiff engaged in a protected activity.

The Defendant first argues that a negative performance review does not constitute adverse employment action. "Although actions short of termination may constitute adverse actions within the meaning of the statute, not everything that makes an employee unhappy is an actionable adverse action. Rather, the action must have had some adverse impact on [Plaintiff] to constitute an adverse employment action" *Id.* (internal quotations and citations omitted).

Plaintiff's performance review was not an adverse employment action. Plaintiff passed all aspects of his review. The only negative statement was a notation that Plaintiff needed to improve his supervisory skills. There was no resulting change in position, title, or salary from this review. Only a suggestion for improvement. Because "this evaluation was never used as the basis for any action against [Plaintiff], it cannot fairly be considered an adverse employment action." *Id.* Therefore Plaintiff has not established a *prima facie* case of retaliation from his performance review.

The Defendant next argues that Plaintiff has not established a causal connection between the protected activity and HUD's failure to promote him to the OIG position. The only evidence Plaintiff offered to prove causation is a timeline of events: Plaintiff filed an EEOC complaint in October 2000, provided an affidavit for another employees EEO action in September 2002, received the performance review in February 2003, applied for the OIG position in April 2003, and was notified of his non-selection in June 2003.

A temporal connection between the protected activity and the adverse employment action "can rarely be sufficient to establish a submissible case of retaliatory discharge." *Kipp v. Mo. Highway & Transp. Comm'n*, 280 F.3d 893, 897 (8th Cir. 2002). As a matter of law, a temporal connection of two months cannot, standing alone, establish a causal connection. *Id.* Here, Plaintiff relies solely on a temporal connection of almost eight months to prove causation. Because Plaintiff has provided no further evidence, he has not established a *prima facie* case of retaliation.

### III.     Privacy Act

Finally, Plaintiff argues that Defendant violated the Privacy Act, 5 U.S.C. § 552a (2004), by disclosing his identity as an EEO witness to Hosking. As stated above, Plaintiff provided an affidavit on behalf of a co-worker in her EEO action. In this affidavit, Plaintiff stated that Hosking treated African-American employees less favorably than others. During the course of the investigation, the EEO investigator revealed to Hosking that Plaintiff had filed this affidavit. Plaintiff claims that this revelation violated his rights under the Privacy Act.

According to the Privacy Act, "[n]o agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains." 5 U.S.C. § 552a(b). In the instant case, Plaintiff consented in writing to the disclosure of his affidavit. The last page of the affidavit contained the following statement: "I understand that the information I have given is not to be considered confidential and that it may be shown to the interested parties." Pl's Ex. 16 at 11. Plaintiff's witnessed signature appeared directly

13

below this statement. Because Plaintiff gave written consent, Defendant's disclosure did not violate the Privacy Act.

## CONCLUSION

Plaintiff cannot bring suit under the Fifth Amendment because Title VII and the ADEA provide the sole judicial remedy for Plaintiff's allegations. Plaintiff has not made a *prima facie* case of race, sex, or age discrimination, nor has he made a *prima facie* case for retaliation. Lastly, a defendant cannot violate the Privacy Act if the plaintiff consented in writing to the disclosure. His claims cannot withstand Defendant's Motion for Summary Judgment. Therefore, Plaintiff's Complaint is dismissed.

Dated this 29th day of December, 2005.

_____
UNITED STATES SENIOR DISTRICT JUDGE